## BAIOCCHI v. EWING.

No. 28187.

United States District Court
N. D. California, S. D.

Dec. 8, 1949.

Arthur L. Johnson, Robert Morgan, San Jose, Cal., for plaintiff.

Frank J. Hennessy, U. S. Atty., San Francisco, Cal., Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., Newell A. Clapp, Acting Asst. Atty. Gen. (Edward H. Hickey, Sp. Asst. to Atty. Gen., Hubert H. Margolies, Attorney, Dept. of Justice, Washington, D. C., Ira Z. Acoff, Attorney, Federal Security Agency, Washington, D. C., of counsel), for defendant.

HARRIS, District Judge.

Plaintiff, widow of a former employee of the California Prune and Apricot Growers Association, seeks to review the decision of the Social Security Administration, made upon plaintiff's application for herself and two minor children for survivors' insurance benefits under the Social Security Act of August 14, 1935, and amendments, 42 U.S.C.A. §§ 401–409.[1] Her case is submitted on a Motion for Summary Judgment, there being no dispute as to the facts.

Plaintiff's husband was employed by the California Prune and Apricot Growers Association. This association is a co-operative corporation which will hereafter be called the Central Sales Agency. It serves as a marketing organization for twenty-eight local non-profit corporations, hereafter called Locals, through which individual grower members handle their produce.

The Central Sales Agency is a packing and processing corporation dealing only with dried fruits which it receives from the Locals in a sulphured, dried state. It handles about one-third of the prunes in California. It has sixteen plants for receiving, grading, packaging and shipping prunes. It is almost twice as large as any of its competitors. It employs processors, packers, clerical personnel, public relations personnel and executives. It does not own any farm, orchard or ranch; it neither raises produce nor harvests any fruit. The plant, in which decedent worked, is located in a heavy industrial area in San Jose. Its operations are identical with those of the Rosenberg Brothers Corporation. See Miller v. Burger, infra.

When Locals turn dried fruit over to the Central Sales Agency the fruit is in a merchantable state. Title to the fruit passes to the Central Sales Agency upon delivery from the Locals, which acquire it from the individual members of the corporations. Payment of the purchase price is postponed, but it is fixed and the Central Sales Agency is subject to account to the Locals according to contract, by-laws and statute. Fruit sometimes remains in storage at the Central Sales Agency for as long as eighteen months. It is sold under its own brands and also under private brands owned by its customers. When dried fruit leaves the packing plant it is in the same condition as when it is sold to the housewife. About 40% of the carton pack is sold to chain stores; about 75% of the bulk is sold to chain stores and super markets.

Specifically, the functions performed by the decedent for the Central Sales Agency were: (1) receiving and grading; (2) processing and packing; (3) shipping; (4) maintenance.

The Central Sales Agency for more than twelve years has made payments of taxes

[1] See 42 U.S.C.A. §§ 402(c, e), 409(g).

and collected contributions from employees in accordance with the provisions of the Social Security Act. It has acted voluntarily to protect its employees, convinced that their work falls within the coverage of the Act. The instant case is not brought at the behest of the cooperative but is necessitated by the interpretation placed upon social security coverage by the Administration.

The specific question for decision is whether plaintiff's deceased husband was an employee of an organization included within the terms of the Social Security Act.

The pertinent part of the Social Security Act whose coverage is in dispute defines agricultural labor as follows: "The term 'agricultural labor' includes all services performed * * * (4) in handling, planting, drying, packing, packaging, processing, freezing, grading, storing, or delivering to storage or to market or to a carrier for transportation to market, any agricultural or horticultural commodity; *but only as such service is performed as an incident to ordinary farming operations or, in the case of fruits and vegetables, as an incident to the preparation of such fruits or vegetables for market.* The provisions of this paragraph shall *not* be deemed to be applicable with respect to service performed in connection with commercial canning or commercial freezing or in connection with any agricultural or horticultural commodity after its delivery to a terminal market for distribution for consumption". 42 U.S.C.A. § 409(*l*). (Italics ours.)

Did the decedent, whose work in the packing house in San Jose consisted of receiving, grading, processing and packing dried fruit for purposes of preparing it for sale to chain stores, cooperatives, and super markets, and doing maintenance work, constitute agricultural labor within the above definition of the Social Security Act?

From the undisputed statement of facts, it is clear decedent worked for a terminal market for distribution for consumption after the dried fruit had reached the grocer's or terminal market.

In construing legislation, such as the Social Security Act, it is axiomatic that the Court should be liberal in its interpretation. Grace v. Magruder, 80 U.S.App. 53, 148 F.2d 679; Latimer v. U. S., D.C., 52 F.Supp. 228; Burger v. Social Security Board, D.C., 66 F.Supp. 619. Furthermore, this Court is free to make its own determination of the scope of the Statute. Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718, 162 A.L.R. 1445.

The task of analyzing and construing the sections of the Social Security Act, whose meaning gives rise to the present controversy, has been simplified by two recent rulings by the Court of Appeals for the Ninth Circuit. In cases which closely parallel the instant suit, the Appellate Court has held that work performed in employment identical with that of decedent in a processing and packaging plant is "covered" employment within the meaning of the Social Security Act. This is the holding in Miller v. Burger, 161 F.2d 992, and Miller v. Bettencourt, 161 F.2d 995. In the Bettencourt case the Court held that the plant in which Bettencourt worked was a "terminal market" for the farmer producers who sold and delivered their dried fruit to that concern. As the Court stated, 161 F.2d at page 994: "Facts make abundantly clear that it was only after the farmer producer sold and delivered the fruit to Rosenberg Bros., that Burger's services * * * were performed for that commercial concern. In this state of the record we regard his services as being performed after all 'agricultural labor' in connection with such dried fruit had ceased". Accordingly, the Court found that the plaintiff was entitled to coverage under the Social Security Act, affirming Judge Mathes and referring to his opinion in Burger v. Social Security Board, supra.

The only basis urged for distinguishing the case at bar from the Burger and Bettencourt cases is the cooperative status of the Central Sales Agency for whom plaintiff's deceased husband worked. This distinction is not sound. In North Whittier Heights Citrus Association v. National Labor Relations Board, 109 F.2d 76, the Court of Appeals for the Ninth Circuit held that

a cooperative similar to that for which decedent worked was not one engaged in agriculture to such an extent that its employees would be considered "agricultural laborers" within the exemptions of the National Labor Relations Act, 29 U.S.C.A. § 151 et seq. The reasoning in the North Whittier case applies with equal force herein.

■ The Social Security Act makes no distinction between cooperatives and other forms of corporations in defining its coverage. While defendant has explored the possibility of making out a technical case in favor of its position, viz. that employees of the Central Sales Agency are indirectly employees of the individual farmer members who belong to the local cooperatives, this Court is not prepared to base its decision on strained legal niceties. Even on the distinguishing features which defendant seeks to emphasize between the Central Sales Agency and a profit corporation, there is authority for holding that the attributes of the two types of corporations are similar for many legal purposes, including coverage under social security legislation. See California Employment Commission v. Butte County Rice Growers Association, 25 Cal.2d 624, 154 P.2d 892.

■ The basic reason for excluding agricultural laborers from coverage of the Act is to be found in the solicitude of Congress for the small farmer who is ill-equipped to maintain complex records on laborers who are hired on a strictly seasonal basis. Obviously the Central Sales Agency, which employs as many as 1500 workers and has a complete accounting staff is not in the category of the individual farmer who requires freedom from bookkeeping responsibilities.

■ The Court concludes that plaintiff's deceased husband was employed in a plant whose workers are covered by the Social Security Act. Plaintiff is entitled to recover on behalf of herself and her two minor children as prayed for, upon preparation of findings of fact and conclusions of law in accordance with this opinion.