Martha TAYLOR, Plaintiff,

v.

Arthur FLEMMING, Secretary, Department of Health, Education and Welfare, Social Security Administration, United States of America, Defendant.

Civ. A. No. 802.

United States District Court
W. D. Arkansas,
Hot Springs Division.

Sept. 7, 1960.

Thomas, Phillips & Wright, Hot Springs, Ark., for plaintiff.

Charles W. Atkinson, U. S. Atty., Robert E. Johnson, Asst. U. S. Atty., Ft. Smith, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

This is an action by the plaintiff, Martha Taylor, to review a final decision of the Secretary of Health, Education and Welfare, denying her application for dependent parent's insurance benefits under Sec. 202(h) of the Social Security Act, as amended. 42 U.S.C.A. § 402(h).

The plaintiff filed her application for benefits on August 14, 1958. In due course the application was administratively denied on October 15, 1958. Thereafter plaintiff requested a hearing before a Referee, and the hearing was duly held in Hot Springs, Arkansas, on April 27, 1959. On April 30, 1959, the Referee filed his decision denying the plaintiff's application. Plaintiff then sought a review of the Referee's decision, but on August 19, 1959, the Appeals Council of the Social Security Administration denied this request, and the decision of the Referee became the final decision of the defendant. It is this decision the court is now called upon to review under provisions of 42 U.S.C.A. § 405(g).

This action was filed on October 19, 1959, and on December 21, 1959, the defendant filed his answer, along with the transcript of the entire record of the proceedings pertaining to the plaintiff's claim. On July 22, 1960, the defendant filed his motion for summary judgment. Briefs, on behalf of both plaintiff and defendant, have been received and considered by the court along with the entire record.

The plaintiff is a resident of the City of Hot Springs in the Western District of Arkansas. She seeks to establish her claim for benefits based upon the wage record of her son, Jack T. Taylor.

Mrs. Taylor was born January 20, 1896. She was married to M. D. Taylor, and on March 10, 1920, Jack T. Taylor was born. In addition to her son, she also had two daughters. Mrs. Taylor had been employed as a practical nurse. However, she sustained a back injury in

1926, which has made it virtually impossible for her to perform this work except for short intervals. In 1936 Mrs. Taylor obtained a divorce in the Chancery Court of Garland County, Arkansas, from M. D. Taylor. There was no provision in the divorce decree for alimony or maintenance, and apparently Mr. Taylor did not contribute anything to the plaintiff's support. Following the divorce, Mrs. Taylor lived with various relatives in Texas and in California. During this period Jack T. Taylor was employed in the Civilian Conservation Corps. Mrs. Taylor received some money from her son's CCC allowance. She was employed from time to time as a practical nurse, and various family members also contributed to her support.

On December 13, 1940, Jack T. Taylor entered the United States Army Air Corps. In February 1941 he started sending his mother $30 to $40 per month, however, he executed no formal allotment. In December 1941 he was sent overseas, and it is not clear whether these payments continued. On March 3, 1942, Jack T. Taylor was reported missing in action. At that time Mrs. Taylor was living with her daughter, June, who was employed as a waitress. After Jack was reported missing in action, Mrs. Taylor began receiving a $40 a month allotment, however this was discontinued in March 1943. In September 1945 Jack T. Taylor was declared officially dead by the Army.

The plaintiff filed a request for a lump-sum death payment, apparently under the provisions of 42 U.S.C.A. § 402(i). This lump-sum death payment was made, and the proceeds were divided between Mrs. Taylor and her former husband. The plaintiff did not file proof of dependency to establish benefits under 42 U.S.C.A. § 402(h), at that time.

Mrs. Taylor stated that in 1951 she read an article in a newspaper to the effect that parents of sons who were killed in World War II had until July 31, 1951, to file proof of support. Acting upon this information, Mrs. Taylor testified that she went to the Social Security Office in Sacramento, California, and inquired relative to whether she should file such proof. She stated that an employee in the office informed her that since she had already received the lump-sum death payment, that it was not necessary to file a proof of support form and that she would receive the parent's dependency benefits automatically upon reaching age 65.

On November 2, 1951, the plaintiff again inquired at the Social Security Office regarding the filing of a proof of support, and at this time she was informed that the deadline for filing such proof was July 31, 1951. Mrs. Taylor finally filed the proof of support along with her application for parent's benefits on August 14, 1958.

The Referee denied plaintiff's application on two grounds: (1) the proof of support had not been filed within the time authorized by law, and (2) the plaintiff failed to present satisfactory and competent evidence that she was 50 percent or more dependent upon her son at the time of his death.

The applicable law is found in 42 U.S.C.A. § 402(h), the pertinent provisions of which provide:

"(h) (1) Every parent (as defined in this subsection) of an individual who died a fully insured individual after 1939, if such parent—

"(A) has attained retirement age,.

"(B) (i) was receiving at least one-half of his support from such individual at the time of such individual's death or, if such individual had a period of disability which did not end prior to the month in which he died, at the time such period began or at the time of such death, and (ii) filed proof of such support within two years after the date of such death, or, if such individual had such a period of disability, within two years after the month in which such individual filed application with respect to such period of disability or two years after the date of such death, as the case may be,

283

"(C) has not married since such individual's death,

"(D) is not entitled to old-age insurance benefits, or is entitled to old-age insurance benefits each of which is less than three-fourths of the primary insurance amount of such deceased individual, and

"(E) has filed application for parent's insurance benefits,

shall be entitled to a parent's insurance benefit * * *."

■ The requirement as to time for filing proof of support quoted in subsection (1) (B) above has been modified insofar as this case is concerned by 42 U.S.C.A. § 417(c), which provides:

"(c) In the case of any World War II veteran to whom subsection (a) of this section is applicable, proof of support required under section 402(h) of this title may be filed by a parent at any time prior to July 1951 or prior to the expiration of two years after the date of the death of such veteran, whichever is the later."

In Wray v. Flemming, D.C.W.D.Ark. 1960, 181 F.Supp. 783, this court defined its duty in this type of case. At pages 785–786 it was stated:

"In Fuller v. Folsom, D.C., 155 F.Supp. 348, at page 349 this court stated the general rules to be followed in reviewing a case of this nature:

" 'The burden of proof, both before the Referee and in the instant proceeding, is upon the plaintiff. Thurston v. Hobby, D.C.Mo., 133 F. Supp. 205; Norment v. Hobby, D.C. Ala., 124 F.Supp. 489. Not only are the findings of fact made by the Referee, if supported by substantial evidence, conclusive, but a majority of courts also extend the finality of the Referee's findings to inferences and conclusions which he draws from the evidence, if there is a substantial basis for the conclusions. * * *

" 'The Referee's conclusions of law, however, are not binding upon the Court, although they are entitled to great weight. See, Miller v. Burger, 9 Cir., 161 F.2d 992; Carroll v. Social Security Board, 7 Cir., 128 F.2d 876; Ayers v. Hobby, D.C.Va., 123 F.Supp. 115; Ray v. Social Security Board, D.C.Ala., 73 F.Supp. 58.

" 'And in reviewing the decision of the Referee, the Court must not abdicate its conventional judicial function. Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456; Shields v. Folsom, D.C.Pa., 153 F.Supp. 733, 734.' "

■ It is undisputed that the plaintiff did not file the proof of support required by 42 U.S.C.A. § 402(h), as modified by 42 U.S.C.A. § 417(c), within the period of time specified by law, that is, on or before July 31, 1951. No cases have been found in which courts have discussed the time limitations for filing a claim under this specific section of the Social Security Act. However, the courts have considered the requirement for timely filing of claims under other sections of the Act. In Ewing v. Risher, 10 Cir., 1949, 176 F.2d 641, the court said at page 644:

"A creative right is one which is conferred by statute as distinguished from one which stems from the common law. The nature of such a right, its quality and character, are dependent upon the statute creating it. The rule is well settled that where a statute creates a right, such as the one in this case, unknown to the common law and limits the time within which the right must be asserted, the limitation defines and controls the right and the right ceases to exist if not asserted within the time fixed in the statute therefor.

* * * * * *

"Filing the application within the statutory time was a necessary incident of the right conferred by the act, and failing to comply therewith extinguished appellee's right to the lump-sum benefits. It is true that the statute is a remedial one and should be liberally administered to

effectuate the congressional purpose, but the congressional purpose must be ascertained from the clear language of the act. While a liberal interpretation should be indulged, such a policy does not warrant adopting a construction inconsistent with the clear wording of the act in order to prevent loss to a claimant resulting from failure to file an application as required by the act."

See also Coy v. Folsom, 3 Cir., 1955, 228 F.2d 276.

As noted above, the plaintiff contends that she made an inquiry at the Social Security Office in Sacramento, California, concerning the proof of support prior to July 31, 1951, and she was informed that she did not have to file such a proof. In plaintiff's brief her attorney argues as follows:

"Since the United States Government can act only through its agents, it would be shocking to allow the United States Government to misinform an individual as to her rights, and then absolve itself from an obligation to that individual because of her reliance upon the misinformation."

█ It is apparent that plaintiff is attempting to assert some type of estoppel against the defendant; however, no cases are cited in support of this position. If Mrs. Taylor did rely to her detriment upon such a statement, it is indeed unfortunate. However, the Government cannot be estopped from insisting upon performance of statutory conditions precedent by the unauthorized acts of an employee of a local Social Security Office. The general rule in this regard is stated in 54 Am.Jur., United States, Sec. 92, and the cases cited therein, as follows:

"The general rule that acts of public officers must, in order to be binding, be within the limits of the power conferred, applies with full force in the case of officers of the United States; officers of the Federal government can bind the government only within the scope of their authority. Declarations of its agents and officers founded upon mistake of fact are not binding upon it unless it clearly appears that such officer or agent was acting within the scope of his authority and empowered in his official capacity to make such declarations. The doctrine that a principal may be bound by the acts of his agent acting in violation of specific instructions, yet within the scope of his general authority, is not applicable to the acts of an officer of the Federal government, the reason being that it is better for an individual to suffer from the mistakes of such officers than to adopt a rule which by collusion or otherwise might result to the detriment of the public. Furthermore, the government does not undertake to guarantee to any person the fidelity of any of the officers or agents whom it employs, since that would involve it in all its operations in endless embarrassments, difficulties, and losses, which would be subversive of the public interest. Therefore, as a general rule, and on grounds of public policy, the government cannot be bound, and is not estopped, by the acts of its officers not within the scope of their authority, and this is true however beneficial the unauthorized acts may have proved to be to the United States.

"Individuals, as well as courts, must take notice of the extent of the authority of officers of the Federal government. When dealing with such public officers, one should inquire into their powers and authority to bind the government, and is held to a recognition of the fact that government agents are bound to fairness and good faith as between themselves and their principal."

The plaintiff has cited no authority or basis which would take the facts in the instant case out of the general rule stated above.

Therefore, since the timely filing of the proof of support is a condition precedent

to recovery of benefits to dependent parents, and since such condition has not been complied with in this case, the Government is not estopped to assert such a condition precedent. Therefore, the defendant's motion for summary judgment must be granted.

In view of the foregoing it is not necessary to consider the question of whether the Referee acted upon substantial evidence in also holding that the plaintiff failed to present satisfactory and competent evidence that she was 50 percent or more dependent upon her son at the time of his death.

An order in accordance with the above is being entered today.