**William Mike SCOTT, Plaintiff,**

v.

**RAILROAD RETIREMENT BOARD,**
**Respondent.**

No. 11532.

United States Court of Appeals
Seventh Circuit.

Nov. 30, 1955.

Leonard B. Levy, New Orleans, La., for plaintiff.

Myles F. Gibbons, Chicago, Ill., David B. Schreiber, Associate Gen. Counsel, Railroad Retirement Board, Chicago, Ill., for defendant, Louis Turner, Ernest O. Eisenberg, Railroad Retirement Board, Chicago, Ill., of counsel.

Before MAJOR, FINNEGAN and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

In this case we are asked to review a decision of the Railroad Retirement Board in which the Board found that the plaintiff, William Mike Scott, was not on August 29, 1935, an "employee" of an "employer" within the meaning of the Railroad Retirement Act of 1937, 45 U.S.C.A. § 228a et seq., as amended in 1946, as shown in 45 U.S.Code (1954 ed.), and 45 U.S.C.A., supra. In this case there was neither a claim by the plaintiff nor any evidence tending to show that on August 29, 1935, plaintiff was in the active service of an "employer."

The plaintiff's claim for an annuity was based solely on Section 1(d) (i) of the Railroad Retirement Act which provides:

"An individual shall be deemed to have been in the employment relation to an employer on the enactment date if (i) he was on that date

on leave of absence from his employment, expressly granted to him by the employer by whom he was employed, or by a duly authorized representative of such employer, and the grant of such leave of absence will have been established to the satisfaction of the Board before July 1947 * * *." 45 U.S.C.A. § 228a(d).

The plaintiff, Scott, filed his application for an annuity under the Railroad Retirement Act on November 21, 1952. In this application he stated that he had been employed by the Texas & Pacific Railway Company, hereinafter referred to as the "Railway," as a clerk from September 12, 1917 to September 14, 1935, when he was discharged; that he had no rights to return to the service of the Railway; and that he claimed no service with the Railway nor with any other "employer" after that date. With his application Scott filed a Railroad Retirement Board form entitled "Employee's Statement of Compensated Service Rendered Prior to January 1, 1937," in which he indicated that on August 29, 1935, he was in the active compensated service of the Railway; but by a letter dated September 23, 1953, the plaintiff clearly and definitely stated that "on August 29, 1935, I was laying off account of being sick. I had worked up until August 1, 1935 * * *. I definitely had an 'employment relation' on August 29, 1935, and the carrier will so advise you."

On June 25, 1942, the Railway filed with the Board for the plaintiff a "Record of Employee's Prior Service." This form was executed by David Wallace, the Chief Clerk to the Assistant Vice President of the Railway. This form stated that on August 29, 1935, plaintiff was not in the compensated service of the Railway. At the same time the Railway filed with the Board an "Employment Relation Questionnaire," Form No. ERR–8a, which was executed by the same official. This document stated

that the plaintiff's last compensated service as a clerk for the Railway before August 29, 1935, was in July 1935 and that his first compensated service after August 29, 1935, was in September 1935; that on August 29, 1935, plaintiff's name was on the clerks' seniority roster, and that on that date the plaintiff was on a furlough but was ready and willing to return to service with the Railway; and that thereafter the plaintiff was restored to service pursuant to Rule 18 of the Agreement between the Railway and the Brotherhood of Railway Clerks.

On February 12, 1953, the Railway filed a second "Employment Relation Questionnaire" form in which the Railway again stated that the plaintiff last worked for it in July 1935 as a warehouse foreman; that in that month plaintiff was recorded as being on furlough on account of a reduction in force and was not recorded as being on leave of absence or absent on account of sickness or disability; and that he was recalled and reported for service in September 1935, but was discharged on September 14, 1935.

The Bureau of Retirement Claims, which first passed on plaintiff's claim, notified Scott that he was not entitled to an annuity based on service prior to January 1, 1937, because he was neither in the active service of, nor in an "employment relation" to, an employer on August 29, 1935.

Thereafter, on April 27, 1953, the Director of Personnel of the Railway wrote to the Board and stated that in one of the company's files there had been found a letter, dated August 28, 1935, which indicated that the plaintiff, instead of being off on furlough at that time on account of a reduction in force, was off due to his sickness. That letter stated that the Railway was "* * * unable to locate where the information that was shown on the [prior] Form ERR–8a was secured." This letter further stated that the company's files were being cor-

rected to show that the plaintiff was off on account of sickness during the month of August 1935. The Railway with this letter submitted another "Employment Relation Questionnaire" which stated that on August 29, 1935, plaintiff was absent on account of sickness, and that he was recalled to duty on September 3, 1935, to a position of six months or more duration but was dismissed on September 14, 1935, for reasons other than disability.

Counsel for plaintiff in his brief in this court states that the sole issue involved in this case is a question of law concerning the interpretation of Section 1(d) (i) of the Railroad Retirement Act as amended in 1946, 45 U.S.C.A. § 228a (i). To sustain his contention of how the above quoted portion of the Act should be construed the plaintiff reminds us that a "liberal construction is generally accorded statutes which are regarded by the Courts as progressive, humanitarian and beneficial." We find nothing wrong with this abstract statement by plaintiff but we do not think it justifies the interpretation of that provision upon which plaintiff insists.

The plaintiff would have us interpret out of the law that part of the Section which provides that "* * * the grant of such leave of absence will have been established to the satisfaction of the Board before July 1947 * * *." The courts are never permitted to "interpret" out of the law an express provision which the Congress has inserted.

The annuities received by employees under the Railroad Retirement Act are not pensions as that word is commonly used. Such annuities are paid from a fund to which the employees and the railroads have contributed equally on all salaries of employees earned after December 31, 1936. Since plaintiff's last work for a railroad was before that date, it follows that he had paid nothing into this fund from which he now seeks to recover an annuity. The fund is set up on an actuarial basis and should not be dissipated by payment of annuities to those who are not covered by the Act and who have made no contribution to the fund.

The Congress has wisely provided that an individual claiming an employment relation to an employer as of the enactment date, August 29, 1935, on the theory that he was on that date on a leave of absence expressly granted to him by his employer, should be entitled to a finding in his favor only if "the grant of such leave of absence will have been established to the satisfaction of the Board before July 1947." This condition to the right of an employee to receive an annuity was inserted by the 1946 Amendment to the Act. The legislative history of the amendment shows that the amendment was made to prevent the possibility of belated claims to annuities to which the claimants were not actually entitled under the Act. See Supplemental Report of the Senate Committee on Interstate Commerce, 79th Congress, 2nd Session, on H.R. 1362 (Report No. 1710, Part 2, July 15, 1946), pages 9 and 10. Such a provision written into a law granting a right is not a statute of limitation, but is a condition which must be complied with before the right arises. In Ewing v. Risher, 10 Cir., 176 F.2d 641, and in Matheny v. Porter, 10 Cir., 158 F.2d 478, the court pointed out the distinction between an ordinary statute of limitation and a limitation found in the statute which created the right of action, and explained that, on the expiration of the time to sue fixed in the statute creating the right, the right of action itself is extinguished. See also 53 C.J.S., Limitations of Actions, § 1b (2) (c), p. 904.

In the instant case we do not have a limitation to sue fixed in the act creating the right. Here we have the Act creating the right providing a condition precedent to the existence of the right. Without compliance of the plaintiff with the condition, he had no right under the Act to an annuity.

As pointed out above, we have no right to "interpret" this condition precedent out of the Act. It is susceptible to only two interpretations: (1) that the Board must be satisfied prior to July 1, 1947, from the evidence then before it of an employer's grant of the leave of absence; or (2) that evidence of a leave of absence must be furnished to the Board prior to July 1, 1947, which will satisfy the Board whenever thereafter it is considered by the Board. The plaintiff here failed to comply with the condition even under the second interpretation.

On July 1, 1947, the only evidence before the Board clearly indicated that on the enactment date the plaintiff was on a furlough because of a reduction in force and was not on a leave of absence as is now claimed. This evidence, as we have pointed out above, was contained in two documents, the Record of Employee's Prior Service and the Employment Relation Questionnaire, which were filed by the Railway with the Board on June 25, 1942. No evidence was presented to the Board to indicate that the evidence presented in 1942 was incorrect until after the plaintiff's claim was filed in 1952. It was not until April 27, 1953, that the Railway wrote a letter to the Board stating that a letter had been found in one of the Railway's files which indicated that on August 29, 1935, the plaintiff had been off due to sickness rather than on furlough as indicated in the former reports of the Railway. Clearly the plaintiff did not furnish the Board before July 1947 evidence to establish that he was on August 29, 1935, on a leave of absence from his employment expressly granted to him by his employer.

Since the plaintiff failed to comply with this condition to the grant of an annuity to him, the Board correctly denied his petition. The order of the Board is therefore

Affirmed.